UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURENCE RABE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08 C 6012 |
| v. | ) |
| | ) Judge Rebecca R. Pallmeyer |
| UNITED AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Laurence Rabé ("Rabe" or "Plaintiff") filed this action against her former employer, United Airlines, Inc. ("United" or "Defendant') on October 12, 2008. Rabé alleges that United terminated her employment as a flight attendant on grounds of national origin, age, sexual orientation, and in retaliation for complaints about employee discrimination. Plaintiff seeks recovery under Title VII of the Civil Rights Act of 1994, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA"). Plaintiff filed her original complaint *pro se* on October 20, 2008, and a Second Amended Complaint ("2d Am. Compl.") through counsel on Jan. 27, 2009. United moves to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1), (3), and (6).

United argues that the court lacks subject matter jurisdiction because Title VII and the ADEA do not protect non-U.S. citizens performing work outside the United States. (Def.'s Mem. in Support of its Mot. to Dismiss ("Def.'s Mem.") at 5.) United also contends that venue and jurisdiction are improper because Plaintiff's Title VII and ADEA claims are precluded by the Railway Labor Act, 45 USC §151 *et seq.*, and by terms of Plaintiff's emploment agreement that compel resolution of this dispute by private arbitration. Finally, United moves to dismiss Plaintiff's IHRA claims on the ground that the Act protects only employment performed within Illinois. For the reasons discussed below, the court concludes that it lacks subject matter jurisdiction to hear Plaintiff's claims Title VII, the

ADEA, and the IHRA, and dismisses Plaintiff's Second Amended Complaint in its entirety.

**BACKGROUND**

Plaintiff is a French citizen whom United initially hired in November 1993 to work as a flight attendant based in Paris. (2d Am. Compl. ¶ 2.) In 1997, she was transferred to United's Hong Kong base, where she worked until her termination in April 2008. (*Id*. at ¶ 7.) Plaintiff's Complaint states of her employment:

> The majority of the time plaintiff was employed by UA, plaintiff worked flights to and from the United States through United States air space, including flights from Paris to various United States cities, and flights from Hong Kong to Los Angeles or San Francisco. When plaintiff was stationed in Paris, 100% of her flights were to and from the United States, and for much of the time plaintiff was stationed in Hong Kong, 90% of the flights plaintiff worked consisted of such flights.

(*Id.* at ¶ 12.) During her employment, Plaintiff paid membership dues to the U.S.-based Association of Flight Attendants, enjoyed the same "perks" and was covered by the same employment and union contracts as her U.S.-national co-workers, and was paid in U.S. dollars on which she paid Federal income and payroll taxes. (*Id.* at ¶¶ 9-11.) The Complaint does not discuss her immigration or visa status during the time she spent in the United States, but according to her statements to the Equal Opportunity Employment Commission ("EEOC"), she does not hold a green card and United did not allow her to enter a U.S. address into their employment files, which show her residence as Hong Kong.[1] ("EEOC Additional Information Sheets" at 4, Ex. B to 2d Am. Compl.)

---

[1] The court may consider evidence beyond Rabé's Complaint to determine whether it has subject matter jurisdiction. *Jackson v. United States*, No. 07 CV 7216, 2008 WL 4089540, at *2 (N.D. Ill. Aug. 21, 2008)("Consideration of evidence outside of the pleadings, for purposes of ruling on a motion to dismiss for lack of subject-matter jurisdiction, will not convert the motion attacking federal jurisdiction into one for summary judgment." (citing *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993))). The court is also free to take judicial notice of Plaintiff's filings in support of her Original and Amended Complaints, including her EEOC Charge. *See* FED. R. EVID. 201; *Goethe v. California*, No. 2:07-cv-01945-MCE-GGH, 2008 WL 3863601, at *3 (E.D. Cal. Aug. 19, 2008) (granting defendant's request that the court take for judicial notice of plaintiff's original complaint and EEOC charge in reviewing motion to dismiss for lack of jurisdiction).

Plaintiff took a voluntary furlough from her employment with United in May 2002. (2d Am. Compl. ¶ 17.) The Complaint does not indicate when she returned to work, but Sarah Voss, a Senior Legal Assistant at United, states in her affidavit that United recalled Plaintiff in August 2005. (Voss Decl. ¶ 3, Ex. 1 to Def.'s Mem.) From that time, Plaintiff made no further flights to the United States as a United employee. (*Id.* ¶ 4.) In addition to Voss's testimony, Defendant supports this claim with flight records showing that Plaintiff's last trip in connection with her work for United was on April 29, 2002. (*Id.*, Part A.)

During Plaintiff's furlough, Plaintiff's co-worker, identified in the Complaint only as "Mr. Fernandes," was promoted to "functional supervisor" for Plaintiff's Hong Kong base of employment. (2d Am. Compl. ¶ 16.) Plaintiff alleges that in 1997 (prior to her furlough), Mr. Fernandes told her, "It is not right to be gay and it is illegal in India." (*Id.* ¶ 15.) Afterward, Plaintiff tried to conceal from Mr. Fernandes that she is a lesbian and that she regularly visits her partner, who lives in Los Angeles. (*Id.* ¶¶ 16-17.) Plaintiff alleges that after she returned from her furlough, Mr. Fernandes, who gained access to Plaintiff's employment and domestic partner information after his promotion, began making comments suggesting that he knew she is a lesbian and asking her regularly whether she was flying to Los Angeles. (*Id.* ¶¶ 17-18.)

On September 11, 2007, Mr. Fernandes began an investigation into Plaintiff's alleged misuse of company-issued personal travel tickets and of a company-issued parking pass for the Los Angeles airport. (*Id.* ¶ 19.) Plaintiff was cleared of any wrongdoing in connection with her use of the parking pass, but United terminated her employment on April 5, 2008, allegedly for her "misuse" of personal travel tickets. (*Id.* ¶¶ 19, 26.) Without specifying what this alleged misuse entailed, Plaintiff asserts that her use of the personal travel tickets did not violate United's labor agreement or rules and did not differ from the behavior "engaged in by other UA employees at the Hong Kong base on a regular basis" without any resulting disciplinary action by United. (*Id.* ¶¶ 19, 24.) Plaintiff claims that she alone was singled out for investigation and termination because of her

sexual orientation (homosexual), her age ("over 40 years") (*Id.* ¶ 29), and her national origin (French) (*Id.* ¶ 27). Plaintiff also believes that United supervisors had a "quota of flight attendants to terminate due to [the company's] financial troubles" and that Defendant was motivated to replace Plaintiff, an experienced employee "at the top of her pay scale," with a younger person "at lower hourly wages." (*Id.* ¶ 25.)

During the investigation leading to Plaintiff's dismissal, Mr. Fernandes allegedly questioned Plaintiff at length about her sexual orientation and "forced Plaintiff to reveal that she was a lesbian and had a domestic partner," an admission that Plaintiff claims "visibly upset" Mr. Fernandes. (*Id.* ¶¶ 21, 26.) Plaintiff alleges that she reported Mr. Fernandes's harassing behavior to Jennifer Wissig, her Hong Kong base manager, but that Ms. Wissig did nothing to stop the harassment and even participated in some of it. (*Id.* ¶ 22.) In addition, Plaintiff alleges that throughout the investigation, from September 2007 through her termination in April 2008, she was not permitted to fly due to her "ABS" status. (Rabé Decl. ¶ 1, Ex. A to Pl.'s Resp.) Plaintiff does not define "ABS" status, but in her Response to Defendant's Motion to Dismiss, she asserts that "she was scheduled and paid for [but did not complete] flights to the USA (Los Angeles, San Francisco, Chicago)" during the period she was under investigation. (Pl.'s Resp. at 3.) Plaintiff does not specify the number of flights she was scheduled for and did not complete, nor did she submit any documents in support of this allegation.

Following her termination, Plaintiff filed charges of discrimination with the EEOC on June 28, 2008 (Ex. B. to 2d Am. Compl.) and with the Illinois Department of Human Rights on September 27, 2008. (Ex. C. to 2d Am. Compl.) On August 22, 2008, Plaintiff received a right-to-sue letter from the EEOC, and on October 20, 2008, she filed suit in this court pursuant to the forum-selection and choice-of-law provision in her employment contract with United. (Ex. A to 2d Am. Compl.) That provision reads in its entirety:

> Jurisdiction over any and all claims, grievances, charges, disputes, and lawsuits

regarding or in any way related to your terms and conditions of employment shall be vested exclusively in either the AFA-United grievance procedure and board of adjustment which is the mandatory jurisdiction provided for by the Railway Labor Act, and the A.F.A. agreement, or in Courts of competent jurisdiction of the United States and State of Illinois where such is permitted by the Railway Labor Act and the A.F.A. agreement.

("Agreement Regarding Terms and Conditions of Employment" at 2, ¶ 6, Ex. A to 2d Am. Compl.) Plaintiff contends that this clause binds United and vests proper jurisdiction in this court.

## DISCUSSION

In considering a motion to dismiss under Rule 12(b), the court accepts Plaintiff's well-pleaded factual allegations as true and must draw all reasonable inferences in Plaintiff's favor. FED. R. CIV. P. 12(b); *see Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 751 (7th Cir. 2004). Subject matter jurisdiction is a threshold issue: it cannot be waived by the parties and may be challenged at any point in the proceedings by a party or raised sua sponte by the court. *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276, 282 (7th Cir. 2009) (citations omitted). In determining whether jurisdiction is proper, the court may consider evidence beyond the complaint "that calls the court's jurisdiction into doubt." *Bastien v. AT&T Wireless Serv. Inc.*, 205 F.3d 983, 990 (7th Cir. 2000). Once the court concludes that it is without subject matter jurisdiction, it "can make no further judicial determination" and must dismiss the underlying claim. *Scott Air Force Base Props., LLC v. County of St. Clair,* 548 F.3d 516, 523 (7th Cir. 2008) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

**Applicability of Title VII, the ADEA, and the IHRA to Plaintiff's Claims**

Defendant presents two alternative bases for its assertion that this court lacks subject matter jurisdiction over Plaintiff's claims. First, Defendant argues that the court lacks jurisdiction to adjudicate Plaintiff's claims under Title VII, the ADEA, and the IHRA because, as a foreign national who performed her work outside the United States, Rabé cannot bring a cause of action under any of these statutes. (Def.'s Mem. 6.) Defendant is correct that neither Title VII nor the ADEA provides

5

a cause of action for foreign nationals performing work outside the United States. Title VII does not apply to "an employer with respect to the employment of aliens outside any State." 42 U.S.C. § 2000e-1; *see Gantchar v. United Airlines, Inc.*, No. 93 CV 1457, 1995 WL 137053, at *9-10 (N.D. Ill. Mar. 28, 1995) ("For purposes of the Title VII claims, international airspace should be considered an extraterritorial workplace.") Similarly, under Congress's 1984 amendments to the ADEA, "[t]he term 'employee' includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." 29 U.S.C. § 630(f). Courts have interpreted this clause to exclude foreign nationals working abroad, thus limiting the ADEA to employment performed within the United States or employment performed by a United States citizen outside the United States. *See Reyes-Gaona v. N. Carolina Growers Ass'n, Inc.*, 250 F.3d 861, 865 (4th Cir. 2001) ("Congress explicitly gave the ADEA extra-territorial application with respect to certain U.S. citizens while simultaneously declining to extend coverage to foreign nationals . . . ."); *Gantchar v. United Airlines, Inc.*, No. 93 CV 1457, 1995 WL 137053 at **9-10 (N.D. Ill. 1995), *reh'g denied*, 1995 WL 798600 ("Since Title VII does not apply extraterritorially for any plaintiff and the ADEA does not for any alien plaintiff [working extraterritorially], those claims must be dismissed for lack of subject matter jurisdiction."; *Hu v. Skadden, Arps, Slate, Meagher & Flom LLP*, 76 F. Supp. 2d 476, 477 (S.D.N.Y. 1999) ("The ADEA would apply to [plaintiff], as a non-citizen, only if he sought to work in the United States."); 2 EQUAL EMP. OPPORTUNITY COMM'N COMPLIANCE MANUAL 2-III (A)(4) (July 27, 2000) ("The EEO statutes [including Title VII and the ADEA] do not protect non-citizens outside the United States.")[2] Defendant suggests that Plaintiff could state an employment discrimination claim within this court's jurisdiction if she performed substantially all her work within the United States, but contends that Plaintiff did not spend sufficient time here for her work to be characterized

---

[2] The EEOC issued a revised version of this section of its Compliance Manual in August 2009, but there is no change to this language. *See* www.eeoc.gov/policy/compliance.html, last visited Aug. 14, 2009.

as "being in a U.S. workplace" under either statute. (Def.'s Reply at 4 (quoting *Gantchar*, 1995 WL 137053, at *9-10.))  This argument is discussed in greater detail below.

Regarding Plaintiff's IHRA claims, Defendant is likewise correct that the statute applies only if Plaintiff worked in Illinois or if the allegedly discriminatory conduct occurred there.  The IHRA defines "employee" as "[a]ny individual performing services for remuneration within this State for an employer." 775 ILCS 5/2-101(A)(1)(a).  For example, in *Wright v. Shop 'n Save Warehouse Foods, Inc.*, the Illinois Human Rights Commission dismissed a complaint against an Illinois employer where the plaintiff, an Illinois resident, worked in Missouri and the alleged discriminatory conduct occurred in Missouri.  ALS No. S 10015, 1998 WL 937843, at *4 (Nov. 6, 1998).  In reaching her conclusion, the Commission's ALJ held that the IHRA does not apply to individuals "wholly employed outside the state of Illinois" and suggested that "the Act was intended to cover only matters arising in Illinois."  *Id.*  Reading the above facts in the light most favorable to Plaintiff, none of the Complaint's allegations indicate Plaintiff worked in Illinois or that any of the alleged discriminatory conduct occurred in Illinois.  Plaintiff's IHRA claim is therefore dismissed for lack of subject matter jurisdiction.

**Choice of Law and Choice of Venue Provisions in Plaintiff's
Employment Contract Do Not Confer Subject Matter Jurisdiction**

Plaintiff does not directly refute Defendant's arguments that neither Title VII, nor the ADEA, nor the IHRA afford her a cause of action.  Instead, Plaintiff devotes the bulk of her brief to arguing that the provisions governing choice of venue and choice of law in her employment contract with United themselves confer subject matter jurisdiction over her claims. The clause in question reads, in pertinent part, as follows:

> Jurisdiction over any and all claims [. . .] shall be vested exclusively in either the AFA-United grievance procedure and board of adjustment which is the mandatory jurisdiction provided by the Railway Labor Act, and the A.F.A. agreement, or in Courts of competent jurisdiction of the United States and State of Illinois where such

is permitted by the Railway Labor Act and the A.F.A. agreement.
(Agreement Regarding Terms and Conditions of Employment at 2, Ex. A to 2d Am. Compl.) Plaintiff cites several cases in support of her contention that a contract's choice-of-forum or choice-of-law clause may be enforced to confer jurisdiction. (Pl.'s Resp. at 4-5 (citing *IFC Credit Corp. v. Aliano Brothers Gen. Contractors, Inc.*, 437 F.3d 606, 609-10 (7th Cir. 2001) (holding that a valid forum selection clause can establish defendant's personal jurisdiction); *Dace Int'l, Inc. v. Apple Computer, Inc.,* 275 Ill. App. 3d 234, 239, 655 N.E.2d 974, 977 (1st Dist. 1995) (enforcing a forum selection clause to defeat a *forum non conveniens* objection); *Aon Corp. v. Utley,* 371 Ill. App. 3d 562, 568-9, 863 N.E.2d 701, 708-09 (1st Dist. 2006) (same)). These cases, however, speak only to the court's power to exercise *personal* jurisdiction, which is not at issue in this case as United has conceded personal jurisdiction for the purposes of this motion. (Def.'s Reply at 7.)

Plaintiff fails to appreciate that an employment contract's choice-of-forum or choice-of-law clause, though potentially relevant to the question of personal jurisdiction, has no bearing on the whether the court may properly exercise *subject matter* jurisdiction over Plaintiff's claims. The parties cannot simply agree among themselves to litigate in this court absent some independent ground for the exercise of federal jurisdiction. *See Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023-24 (7th Cir. 2001) ("[F]ederal question jurisdiction arises only when the complaint standing alone 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Minor v. Prudential Securities, Inc.*, 94 F.3d 1103, 1105 (7th Cir.1996))). In this case, Plaintiff's employment agreement is no help in establishing subject matter jurisdiction when that jurisdiction is not conferred by statute. The court must look to the substantive law of the statutes to determine whether subject matter jurisdiction is proper.

**The United States Is Not Plaintiff's Workplace for the Purposes of Title VII or the ADEA**

Plaintiff does touch briefly on the argument that she spent at least some portion of her

employment flying within the United States and suggests that if United had not deliberately "forbid[den] Plaintiff from flying her assigned flights to the United States," her time working in the United States would have been significant. (Pl.'s Resp. at 7.) Plaintiff does not specifically allege that the majority or even a substantial number of the assigned flights would have brought her to the United States, nor does she argue that completing the assigned flights to the United States would have brought her claims within the ambit of Title VII, the ADEA, or the IHRA. Rather, Plaintiff complains that Defendant should not be permitted to challenge this court's jurisdiction under the employment contract's provisions because Defendant deliberately prevented Plaintiff from working her assigned flights to and from the United States. (Pl.'s Resp. at 3-5.) Plaintiff further contends that it would be unfair to leave her without a venue in which to litigate her claims, as courts in Hong Kong would presumably interpret her employment contract as requiring her to bring suit in the United States. (*Id.* at 4 n. 4.)

For its part, Defendant addresses the possibility that an alien employed by a United States company may be able to state a claim under Title VII or the ADEA if she worked in the United States for a substantial period of time. Authority is split as to the proper test for determining the amount of time spent working in the United States necessary for either statute to apply. Courts in this Circuit have traditionally accorded the greatest weight to the location of the plaintiff's "primary workplace." *See Wolf v. J.I. Case Co.,* 617 F. Supp. 858, 863 (E.D. Wisc. 1985) (location of the "'work station,'" rather than place were plaintiff is hired or where termination decision is made, determines the applicability of discrimination law); *Pfeiffer v. Wm. Wrigley Jr. Co.,* 755 F.2d 554 (7th Cir. 1985) (plaintiff's workplace controls). For example, courts have concluded that Title VII and the ADEA does not cover aliens whose "primary workstation" is abroad, even where certain significant employment events occurred within the United States. *See Shekoyan v. Sibley Intern. Corp.*, 217 F. Supp. 2d 59, 68 (D.D.C. 2002), *aff'd*, 409 F.3d 414 ("A determination of a plaintiff's location of employment for both Title VII and ADEA purposes focuses on the location of the

9

employee's primary workstation." (citing *Denty v. SmithKline Beecham Corp.*, 109 F.3d 147, 150 (3rd Cir. 1997))). Examples of events occurring within the United States yet insufficient to make the United States a foreign plaintiff's primary workstation include: supervisory employment decisions and training within the United States for foreign-based employees (*Shekoyan*, 217 F. Supp. at 68); a decision not to promote U.S.-based aliens employed by a foreign corporation to positions outside the United States (*Denty*, 109 F.3d 147); an initial two-month training period in the United States for a foreign-based job (*Mithani v. Lehman Bros., Inc.*, No. 01 CIV 5927 IJSM, 2002 WL 14359 at *1 (S.D.N.Y. Jan. 4, 2002)); or interviews occurring in the United States for foreign-based work (*Hu,* 76 F. Supp. 2d at 477).

In contrast to the "primary workstation" test, several courts, recognizing the fluidity of certain types of employment, have adopted a "center-of-gravity" approach for determining extra-territoriality. *Rodriguez v. Filtertek, Inc.*, 518 F. Supp. 2d 845 (W.D. Tex. 2007) sets forth the rationale behind this test:

> This Court finds that the primary-work-station test is vague and overly simplistic in its determination of employment within the United States. The test assumes that an employee *has* a primary work station--an assumption that may be invalid given the nature of our global economy with its mobile workforce. And the case law on the primary-work-station test provides scant guidance.
> Based on these considerations, this Court adopts the more comprehensive *Torrico* center-of-gravity test.

*Id.* at 851 (citing *Torrico v. Int'l Bus. Machines Corp.*, 213 F. Supp. 2d 390, 405 (S.D.N.Y. 2002)). Applying factors set forth in *Torrico*, the *Rodriguez* court concluded there were material disputes of fact regarding the location where plaintiff's employment agreement was negotiated; the location from which she was supervised; and the amount of time she spent traveling to the United States from Mexico*. Id.*; *see also Gomez v. Honeywell Intern., Inc.*, 510 F. Supp. 2d 417 (W.D. Tex. 2007) (denying motion to dismiss for nearly identical reasons as in *Torrico*); *Wolf v. J.I. Case Co.,* 617 F. Supp. 858, 862 (E.D. Wis. 1985) (speculating that "an 'ambulatory' job, such as an airline pilot, . . . might present [a] true case[] of dual foreign and United States employment subject to ADEA

protection.").

*Gantchar*, one of only a few decisions to consider the question of extraterritoriality with respect to foreign nationals whose work regularly takes them to and from the United States, follows a hybrid approach on the question of extraterritoriality. In *Gantchar*, the court acknowledged that "[t]he primary focus must be on the location of plaintiffs' potential employment," but recognized that certain jobs requiring heavy travel may involve more than one workstation. *See* 1995 WL 137053, at *6. The court ultimately dismissed failure-to-hire claims brought under Title VII and the ADEA by ten foreign nationals who had been considered for positions as flight attendants based overseas, but whose work would consist primarily of flights to and from the United States. 1995 WL 137053, at *4. The court first cited the general rule that, absent congressional intent to the contrary, "employment in international waters or airspace should be considered outside the territory of the United States and not within the jurisdiction of a statute . . . " *Id.* at *8 (citing cases)). The court then proceeded to estimate the amount of time the plaintiffs *would have* spent in United States airspace had they been hired, i.e., how much time they would have spent working in the United States if the alleged discrimination had not occurred. *Id.* at *8-9. Applying some rough calculations, the court determined that the London-based flight attendants could have spent at most "approximately 20%" of their worktime in or over the United States. *Id.* at *10. "Only spending one-fifth of one's worktime in the United States while living and being based in a foreign country," the court concluded, "is held to be not substantial enough for the work to lose its extraterritorial character." *Id.*

In the case before this court, Plaintiff will be unable to proceed under either the "primary workstation" or "center-of-gravity" tests. *Gantchar* is particularly instructive, as it too deals with the ambulatory job of flight attendant. Similar to the plaintiffs in that case, Rabé argues that she would have spent substantial time in the United States but for Defendant's discriminatory conduct, which prevented her from completing any of her scheduled flights. Rabé alleges that when she "was

11

stationed in Paris [from November 1993 through 1997], 100% of her flights were to and from the United States, and for much of the time plaintiff was stationed in Hong Kong [from 1997 through April 2008], 90% of the flights." (2d Am. Compl. ¶ 12.) Her final flight to the United States took place on April 29, 2002, prior to her voluntary furlough in 2005 and approximately five years before the start of the alleged discriminatory conduct in September 2007. (Def.'s Reply at 5.) Plaintiff also claims she was scheduled to perform round trip flights to United States, but does not specify how many or what percentage of her total work time these flights would have comprised. Indeed, Plaintiff provides no information concerning the amount of work she had previously performed or would have performed within the United States if Defendant had not grounded her throughout its investigation.

This court agrees with *Gantchar* that "[i]t is sensible that a foreign-based transportation worker must spend a greater percentage of time working in the United States, than would a United States based transportation worker, before the work would be characterized as being in a United States workplace." 1995 WL 137053, at *10. Although Plaintiff's Complaint provides no information concerning how much total time Plaintiff spent working within the United States, the court notes that Plaintiff did perform a substantial amount of work in Hong Kong; she understood Hong Kong to be her "base," and her interactions with management, including her investigation and termination, took place there. Given that Plaintiff's work and domicile were both based in a foreign country and the absence of any showing that she spent significant time working within the United States, the court concludes that her total time spent in this country was not "substantial." The court therefore dismisses Plaintiff's claims under Title VII and the ADEA for lack of subject matter jurisdiction.[3]

## CONCLUSION

---

[3] In light of this conclusion, the court need not address Defendant's alternative argument that the Railway Labor Act ("RLA") bars this court from adjudicating Plaintiff's claims. 45 U.S.C. § 151 *et seq.* (Def.'s Mem. at 9.)

Defendant's motion to dismiss [28] is granted. This case is dismissed without prejudice for lack of jurisdiction. This order is final and appealable.

ENTER:

Dated: August 14, 2009

_____
REBECCA R. PALLMEYER
United States District Judge